Filed 2/27/13  P. v. Hardin CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LEON DEWAYNE HARDIN,<br><br>    Defendant and Appellant. | B234206<br><br>(Los Angeles County<br>Super. Ct. No. PA065806-02) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSE JOEL MORENO,<br><br>    Defendant and Appellant, | B235155<br><br>(Los Angeles County<br>Super. Ct. No. PA065806-01) |

APPEALS from judgments of the Superior Court of Los Angeles County, David B. Gelfound, Judge.  Affirmed.

Marilyn Drath, under appointment by the Court of Appeal, for Defendant and Appellant, Leon Dewayne Hardin.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

Michael S. Pedretti, for Defendant and Appellant, Jose Joel Moreno.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Stephen D. Matthews and Zee Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jose Joel Moreno and Leon Dewayne Hardin appeal from the judgments entered after a jury convicted both of them of attempted carjacking and attempted robbery and Moreno of assault with a deadly weapon (a knife). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Charges*

Moreno and Hardin were accused of attempting to steal Braulio Trejo's car after Trejo had helped them try to repair their truck's flat tire. Both men were charged by amended information with attempted carjacking (Pen. Code, §§ 215, subd. (a), 664)[1] (count 1) and attempted second degree robbery (§§ 211, 664) (count 2). Moreno was also charged with assault with a deadly weapon (§ 245, subd. (a)(1)) (count 3), and it was specially alleged he had personally used a deadly or dangerous weapon within the meaning of section 12022, subdivision (b)(2), in committing counts 1 and 2.

As to all counts it was further specially alleged Moreno had suffered two prior serious or violent felony convictions within the meaning of the "Three Strikes" law (§§ 667, subds.(b)-(i), 1170.12, subds. (a)-(d)) and one prior serious felony conviction within the meaning of section 667, subdivision (a)(1), and had served several separate prison terms for felonies (§ 667.5, subd. (b)). With respect to Hardin, it was specially alleged as to counts 1 and 2 he had suffered two prior serious or violent felony

---

[1]     Statutory references are to the Penal Code unless otherwise indicated.

convictions within the meaning of the Three Strikes law and section 667, subdivision (a)(1).

Moreno and Hardin pleaded not guilty and denied the special allegations.

2. *The Trial Court's Ruling Evidence the Truck Was Stolen Was Admissible*

On the first day of trial Moreno moved to exclude evidence the truck they had been driving was stolen, arguing it was unduly prejudicial because there was no evidence Moreno or Hardin had stolen it or knew it was stolen. The People argued the evidence was relevant because it provided a motive for attempting to steal Trejo's car—to get away from the stolen truck—and to forestall the jury from speculating why they would leave their own vehicle behind when it could so easily link them to the crime. The court ruled the evidence was admissible subject to a limiting instruction there was no evidence Moreno or Hardin had stolen the truck.

3. *Summary of the Evidence Presented at Trial*

Trejo testified he was at the home of his sister Enriqueta Trejo with several family members on December 25, 2009 when he went to retrieve something from his car around 8:00 p.m. As he walked to the car, he saw Moreno sitting in the driver's seat and Hardin sitting in the passenger seat of a truck.[2] Hardin asked Trejo if he had a spare tire. Trejo responded his spare would be too small, but agreed to ask his family whether anyone had a suitable spare tire. No one else was willing to help.

Enriqueta Trejo testified she took trash outside around 8:00 p.m. and saw Moreno and Hardin sitting in the truck. Moreno asked her if she had a spare tire.[3] She eventually agreed to give them one in exchange for $100, which she would return when Moreno returned the tire. Braulio Trejo was not present during this exchange.

---

[2]     A stipulation was read to the jury that the truck had been taken without the owner's permission while parked on a street in San Diego County. Pursuant to the court's pretrial ruling, the jury was instructed there was no evidence Moreno or Hardin had stolen the truck.

[3]     Hardin contends Enriqueta Trejo likely misidentified Moreno as the person who asked to borrow the tire because Moreno had gained about 45 pounds since he was taken into custody.

Hardin subsequently came to the house and asked if Trejo had any tools. Trejo agreed to help change the tire. When this tire did not fit, Hardin asked if Trejo could give him and Moreno a ride. Trejo agreed. As Trejo sat in his car, Hardin got in the passenger seat. Moreno came to the driver's side door and told Trejo to get out. When Trejo hesitated, Moreno repeated the command several times and put a knife to Trejo's neck through the open window. Trejo got out but immediately punched Moreno in the face. The two men fought. Moreno swung the knife at Trejo but dropped it at some point in the fight. After a few minutes Trejo's family members came outside to help. Hardin fled, but Trejo and others restrained Moreno until the police arrived. Hardin was apprehended shortly thereafter.

The knife was recovered by the police from the roof of Trejo's car where one of his sisters had placed it. No fingerprints were found on the knife.

Moreno and Hardin did not testify or present any other witnesses in their defense.

4. *The Jury's Verdict and Sentencing*

The jury found Moreno guilty of attempted carjacking, attempted robbery and assault with a deadly weapon and found true the special use-of-a-deadly-weapon allegations. In a bifurcated proceeding the trial court found true the prior conviction allegations and sentenced Moreno to an aggregate state prison term of 31 years to life, consisting of a Three Strikes sentence of 25 years to life for attempted carjacking plus five years for the section 667, subdivision (a)(1), enhancement, plus one year for the weapon-use enhancement. Sentence on counts two and three was stayed pursuant to section 654.

The jury also found Hardin guilty of attempted carjacking and attempted robbery. After a bifurcated proceeding in which the court found true Hardin had previously been convicted based on a negotiated plea agreement of assault with a semiautomatic weapon (§ 245, subd. (b)) and making a criminal threat (§ 422), Hardin moved to dismiss the strike allegations in the interests of justice. (§ 1385; *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.) In support of the motion Hardin argued he was married, owned his own home, was training to be a pastor and had been steadily employed for more than

4

15 years at the time of the incident; the two prior strike convictions in 2006 arose after he tried to defend himself when a group of gang members threatened him; his conviction for infliction of corporal injury upon a spouse or cohabitant (§ 273.5, subd. (a)) in 2007 was in part due to an over-prescription of pain medication after back surgery; the fact he had never served time in state prison demonstrated his prior convictions were not serious offenses; and his role in the attempted carjacking and attempted robbery was essentially passive and minor.

In declining to dismiss the strikes, the court found Hardin had an extensive adult criminal record beginning in 1990: "1990 resisting [arrest], obviously it is a misdemeanor. He picks up two of those in 1990. 1994 he picks up a gun charge as a misdemeanor. In '97 he picked up a [battery] and ultimately pleads to a cruelty to animals charge. So we have consistent contact from 1990 to 1997. Then his degree of seriousness increases. 2006, strike prior where he allegedly made threats armed with a gun. It's very serious. He has a handgun. It's a violent crime. He's given probation . . . a huge break. And despite that break what does he do while on probation? He picks up a [section] 273.5 . . . where in that case he allegedly beat up his girlfriend. Again, he's given [execution of sentence suspended]. . . . He's given another huge break. And in 2009 he picks up another battery charge. Despite that then picks up our case."

The court also reviewed the circumstances of the current offense, noting it was a "violent, violent crime" in which a knife was used and the victim could have been killed. Based on its conclusion Hardin was "a person who's been given chance after chance with the legal system," the court found "it would be an abuse of discretion to strike a strike in this case." The court sentenced Hardin to an aggregate state prison term of 30 years to life, consisting of a Three Strikes sentence of 25 years to life for attempted carjacking plus five years for the section 667, subdivision (a)(1), enhancement.[4] Sentence on count 2 was stayed pursuant to section 654.

---

[4] Because these two serious felony convictions were not based on "charges brought and tried separately," Hardin properly received only one five-year enhancement under section 667, subdivision (a). (See *In re Harris* (1989) 49 Cal.3d 131, 136 ["the

## CONTENTIONS

Moreno contends the evidence the truck had been stolen was an unduly prejudicial uncharged act of misconduct and there was insufficient evidence he had personally used a knife. Hardin contends he was denied effective assistance of counsel because his trial attorney failed to object to admission of evidence the truck was stolen, there was insufficient evidence he had aided and abetted the crimes of attempted carjacking and attempted robbery, and the court abused its discretion in failing to dismiss his prior convictions in the interest of justice.

## DISCUSSION

1. *The Trial Court Did Not Abuse Its Discretion in Admitting Evidence the Truck Was Stolen*

   a. *Governing law*

   Evidence is admissible only if it is relevant. (Evid. Code, § 350.) All relevant evidence is admissible except as otherwise provided by a statutory or constitutional exclusionary rule. (See Cal. Const., art. I, § 28, subd. (f)(2); Evid. Code, § 351.) Relevant evidence is defined as evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) The general test of relevance "'is whether the evidence tends "logically, naturally, and by reasonable inference" to establish material facts such as identity, intent, or motive.'" (*People v. Bivert* (2011) 52 Cal.4th 96, 116.) However, if evidence leads only to speculative inferences, it is irrelevant. (*People v. Morrison* (2004) 34 Cal.4th 698, 711.)

   Even if relevant, evidence may be excluded in the trial court's discretion if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. (Evid. Code, § 352; *People*

---

requirement in section 667 that the predicate charges must have been 'brought and tried separately' demands that the underlying proceedings must have been formally distinct, from filing to adjudication of guilt"].)

*v. Lee* (2011) 51 Cal.4th 620, 643.) A trial court has broad discretion in determining whether evidence is relevant and whether Evidence Code section 352 precludes its admission. (*People v. Mills* (2010) 48 Cal.4th 158, 195; *People v. Williams* (2008) 43 Cal.4th 584, 634.) We review for abuse of discretion a trial court's rulings on the admissibility of evidence, including those turning on the relevance or probative value of the evidence in question. (*Lee,* at p. 643; *People v. Hamilton* (2009) 45 Cal.4th 863, 930.) Nevertheless, even if the trial court abused its discretion in admitting irrelevant evidence, reversal is not warranted unless the evidence was prejudicial. "[S]tate law error in admitting evidence is subject to the traditional *Watson* test: The reviewing court must ask whether it is reasonably probable the verdict would have been more favorable to the defendant absent the error." (*People v. Partida* (2005) 37 Cal.4th 428, 439.) Federal due process is offended only if admission of the irrelevant evidence renders the trial fundamentally unfair. (*Ibid.*)

> b. *The trial court did not abuse its discretion in finding the evidence relevant and not unduly prejudicial*

Moreno and Hardin contend evidence the truck had been stolen was an unduly prejudicial uncharged act of misconduct from which the jury might infer they were more likely guilty of the charged crimes. (See *People v. Ewoldt* (1994) 7 Cal.4th 380, 393 [Evid. Code, § 1101 prohibits admission of evidence of person's character, including specific instances of uncharged misconduct, to prove conduct of person on specific occasion; evidence may be admitted if relevant to establish identity, intent and motive].) They argue any relevance the truck was stolen had on the issue of motive was weak because they could have called a taxi (Hardin had $210 when he was arrested), taken a bus or simply accepted the ride Trejo was willing to give them to distance themselves from the stolen vehicle.

As a threshold matter, Moreno and Hardin's argument the evidence was improperly admitted under Evidence Code section 1101 has been forfeited: Moreno objected to the admission of the evidence as irrelevant and prejudicial under Evidence Code section 352, not under Evidence Code section 1101. (See *People v. Williams*,

7

*supra*, 43 Cal.4th at p. 620 [""'questions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be urged on appeal"'"]; see generally Evid. Code, § 353, subd. (a) ["[a] verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless . . [¶] . . . [t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion"].)  Moreover, and perhaps the reason counsel did not advance the argument in the trial court, the People were not seeking to introduce, and there was no evidence of, an uncharged act of misconduct.  As discussed, there was no evidence Hardin or Moreno had stolen the truck, and the jury was so instructed.  In addition, there was no direct or circumstantial evidence they knew it had been stolen.  (Cf. *People v. Garelick* (2008) 161 Cal.App.4th 1107, 1115 ["truth of the prior uncharged act and defendant's connection to it are preliminary factual issues which must be decided before the prior misconduct can be deemed admissible; if the prior and defendant's connection to it are not established by a preponderance of the evidence, the prior is irrelevant to prove the Evidence Code [§] 1101(b) fact for which it is being offered"].)

Although Moreno and Hardin have forfeited their argument based on Evidence Code section 1101, subdivision (b), we nonetheless review whether the trial court abused its discretion in admitting the evidence under Evidence Code sections 350 and 352. Without question, the absence of any proof Moreno and Hardin knew the truck was stolen undermines the People's argument at trial the evidence provided a motive for attempting to steal Trejo's car—to get away from the stolen truck.  Nevertheless, the People properly asserted the evidence was relevant to forestall the jury from speculating why they would leave behind their own vehicle when it could so easily link them to the crime.  To be sure, the court perhaps could have limited the evidence to a statement the truck was not registered to Moreno or Hardin, or otherwise linked to them, but under the circumstances it was not unduly prejudicial to admit evidence the truck was stolen:  "The prejudice which exclusion of evidence under Evidence Code section 352 is designed to

8

avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. '[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is "prejudicial." The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues.'" (*People v. Karis* (1988) 46 Cal.3d 612, 638; see *People v. Alexander* (2010) 49 Cal.4th 846, 905 [evidence need not be excluded under Evid. Code, § 352 "unless it 'poses an intolerable "'risk to the fairness of the proceedings or the reliability of the outcome'"'"].) Here, the prejudice to Moreno and Hardin resulted not from some policy concern or danger the evidence could be misconstrued or might evoke an emotional bias against them unrelated to the issues, but from its relevance to the reason Moreno and Hardin might be willing to commit the charged offenses.[5]

Even if the trial court erred in admitting the evidence, it was harmless. Trejo's testimony was strong evidence Moreno and Hardin had committed the crimes. Moreno and Hardin attempted to discredit Trejo by identifying contradictions in his testimony as well as conflicts between his testimony and his family member's testimony, but the jury clearly found Trejo credible. Whether Moreno and Hardin were in a stolen truck prior to the commission of the crimes has no bearing on Trejo's credibility. It is not reasonably probable the verdict would have been more favorable to the defendant absent admission of the evidence. (See *People v. Partida*, *supra*, 37 Cal.4th 428, 439.)

---

[5]     Because the evidence the truck had been taken from its owner without permission was properly admitted at trial, we reject Hardin's contention his counsel provided ineffective assistance when he failed to join Moreno's objection to the evidence. (See *People v. Lewis* (2001) 25 Cal.4th 610, 674, 675, 678 [defendant failed to demonstrate prejudice as is required for reversal on ineffective assistance grounds].) In a separate order filed concurrently with this opinion, we summarily deny Hardin's petition for writ of habeas corpus, filed during the pendency of this appeal, which raises the same ineffective-assistance-of-counsel argument.

2. *The Jury's Verdict Is Supported by Substantial Evidence*

a. *Standard of review*

When considering challenges to the sufficiency of the evidence, we "review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

b. *There was sufficient evidence Moreno used a knife*

Moreno contends there was insufficient evidence he used a knife during the altercation because Trejo's "testimony regarding the existence of the knife was erratic and illogical." For example, Moreno argues, Trejo testified Moreno hit him with the same fist that was carrying the knife, "a very difficult task to pull off"; even though Trejo was being assaulted with a knife, he never yelled to his family or tried to run away; and, although they allegedly fought for an extended period of time, Trejo was never cut or even nicked by the knife.

10

Even if some portions of Trejo's testimony could properly be described as erratic or illogical,[6] nothing he described was "physically impossible or inherently improbable." Thus, this testimony alone is sufficient to support Moreno's conviction and the jury's true findings he had personally used a knife during the crimes. (*People v. Elliott* (2012) 53 Cal.4th 535, 585.) Moreover, the jury was presented with more than just Trejo's testimony. A knife found at the scene was introduced into evidence, and Enriqueta Trejo testified she saw the knife near the rear tire of Trejo's car.

### c. *There was sufficient evidence Hardin aided and abetted the attempted carjacking and attempted robbery*

"A person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." (*People v. Beeman* (1984) 35 Cal.3d 547, 561.) "'"[T]he test is whether the accused in any way, directly or indirectly, aided the perpetrator by acts *or* encouraged him by words or gestures."'" (*People v. Campbell* (1994) 25 Cal.App.4th 402, 411, italics added.) Although mere presence and failure to prevent a crime are insufficient to establish aiding and abetting liability, presence at the scene is a relevant factor. (See *id.* at p. 409.)

There was sufficient evidence Hardin aided and abetted the crimes and was not, as he contends, simply doing nothing because he was "between a rock and a hard place," not wanting to commit a crime but also not wanting to get in a fight with Moreno. Trejo testified Moreno and Hardin were whispering to each other outside his car just before the crimes occurred. Moreover, after Moreno initially put a knife to Trejo's neck and told him to get out of the car, Hardin said, "Yeah, that's right. Get out." Then, when Moreno and Trejo were fighting, Hardin told Moreno to hurry up because he was taking too long. Finally, Hardin tried to pull Trejo into the car during the struggle between Moreno and Trejo.

---

[6] Moreno mischaracterizes the record. Trejo testified he thought he had yelled out for help and believed the knife cut a small hole in his sweater.

Hardin attempts to discount the significance of this evidence, pointing to other testimony at trial.  For example, Trejo conceded he could not see Hardin's hands and thus did not really know whether Hardin was grabbing him, and Trejo's brother-in-law testified he saw Hardin sitting in the passenger seat with a beer in his hand.  Hardin also argues, if he had intended to help Moreno, he could have done a number of things including take Trejo's car keys, which were in the ignition while Trejo and Moreno were fighting.

All such conflicts and inconsistencies in the testimony were for the jury to resolve. (See *People v. Zamudio*, *supra*, 43 Cal.4th at p. 357.)  The evidence in the record was more than sufficient to sustain Hardin's convictions for aiding and abetting.

3. *The Trial Court Did Not Abuse Its Discretion in Sentencing Hardin to 30 Years to Life Pursuant to the Three Strikes Law*

a. *Governing law*

Section 1385, subdivision (a), vests the court with discretion to dismiss a prior conviction, including a qualifying strike conviction, "in furtherance of justice." (*Romero, supra*, 13 Cal.4th at p. 530; *People v. Williams* (1998) 17 Cal.4th 148, 158.)  "[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law . . . or in reviewing such a ruling, the court . . . must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams,* at p. 161.)

We review the trial court's decision not to dismiss a prior strike allegation under section 1385 for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 376.) "[T]he three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so.  In doing so, the law creates a strong presumption that any sentence

12

that conforms to these sentencing norms is both rational and proper. [¶] . . . [¶] . . . '[I]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. . . . Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Id.* at p. 378.)

b. *The trial court did not abuse its discretion in refusing to dismiss a prior strike conviction*

Citing *People v. Benson* (1998) 18 Cal.4th 24 (*Benson*) and *People v. Burgos* (2004) 117 Cal.App.4th 1209 (*Burgos*), Hardin contends the trial court abused its discretion in failing to dismiss one of the strikes because the two strikes were so closely connected as to have risen from a single act.[7] Hardin's reliance on these two decisions is badly misplaced.

In *Benson*, *supra*, 18 Cal.4th 24, the Supreme Court held, when a defendant has previously suffered two qualifying strike convictions, one of which was stayed pursuant to section 654, both convictions are properly treated as strikes for future sentencing

---

[7] As discussed, Hardin's strikes convictions were the result of a negotiated agreement in 2006 pursuant to which he pleaded no contest to assault with a semiautomatic handgun and making a criminal threat and admitted related firearm enhancement allegations. He was sentenced to a six-year state prison term for the aggravated assault conviction, as enhanced, and a concurrent sentence for making a criminal threat; execution of both sentences was stayed, and Hardin was placed on formal probation. Although Hardin argues the concurrent sentence for making a criminal threat was not an express term of the plea agreement and contends that sentence should have been stayed pursuant to section 654, at the plea hearing the court informed Hardin the two convictions constituted two strikes: "[W]hile they are both felony convictions, they are also strike convictions so you cannot own or possess any weapons or firearms for the rest of your life, or any ammunition. If you did, you would be facing a whole new felony charge. And because there are two strikes, that means you could be facing life in the future, if you ever did that."

13

purposes. (*Benson*, at pp. 26-27.) The Court explained, "[A] trial court retains discretion in such cases to strike one or more prior felony convictions under section 1385 if the trial court properly concludes that the interests of justice support such an action." (*Id.* at p. 36.) The Court also noted, "[b]ecause the proper exercise of a trial court's discretion under section 1385 necessarily relates to the circumstances of a particular defendant's current and past criminal conduct, we need not and do not determine whether there are some circumstances in which two prior felony convictions are so closely connected—for example, when multiple convictions arise out of a single act by the defendant as distinguished from multiple acts committed in an indivisible course of conduct—that a trial court would abuse its discretion under section 1385 if it failed to strike one of the priors." (*Benson*, at p. 36, fn. 8.)

In *Burgos* the appellate court found the trial court had abused its discretion in declining to strike one of defendant's prior strike convictions for robbery and carjacking. (*Burgos*, *supra*, 117 Cal.App.4th at p. 1216.) The *Burgos* court read the *Benson* footnote to "strongly indicate[] that where the two priors were so closely connected as to have arisen from a single act, it would necessarily constitute an abuse of discretion to refuse to strike one of the priors." (*Burgos*, at p. 1215.) The court emphasized, however, "not only did the two prior convictions arise from the same act, but, unlike perhaps any other two crimes, there exists an express statutory preclusion on sentencing for both offenses." (*Id.* at p. 1216 [citing § 215, subd. (c)].)[8]

Appellate decisions since *Burgos* have analyzed whether it categorically held one of two strikes arising from a single act must be dismissed or whether that is simply one factor the trial court should consider in exercising its discretion. (See, e.g., *People v. Scott* (2009) 179 Cal.App.4th 920, 931 (*Scott*).) While finding *Burgos* itself not entirely clear on the point, these decisions have rejected the proposition a trial court lacks discretion under similar circumstances. In *Scott*, for example, the court held "the 'same

---

8    Section 215, subdivision (c), states, "[N]o defendant may be punished under this section and Section 211 for the same act which constitutes a violation of both this section and Section 211."

14

act' circumstances posed by robbery and carjacking cases provide a factor for a trial court to consider, but do not *mandate* striking a strike." (*Ibid.*) This issue is now pending in the Supreme Court. (*People v. Vargas* (2012) 206 Cal.App.4th 971, review granted Sept. 12, 2012, S203744.)

However the Supreme Court resolves the question whether a trial court must dismiss one of two strike convictions for carjacking and robbery, here Hardin's pleas to the charge of aggravated assault and making a criminal threat were not based on a single act even if they were part of a continuous course of conduct and properly subject to section 654's limitation on multiple punishments—an issue we need not decide. Hardin both displayed a semiautomatic firearm as part of the assault and made a qualifying verbal threat within the meaning of section 422. Under the holding of *Benson*, *supra*, 18 Cal.4th 24, the trial court necessarily had discretion to deny Hardin's motion to dismiss one of those strikes; and its decision to do so was well within its discretion, particularly in light of Hardin's extensive criminal history. (See *People v. Carmony*, *supra*, 33 Cal.4th at p. 378 [in light of presumption sentence is rational and proper, court abuses discretion in limited circumstances such as when court not aware of discretion to dismiss or when court considers impermissible factors].)

Hardin's additional argument the court failed to take into consideration the passive nature of his action in the current case fails for two reasons. First, as discussed, Hardin has misstated or ignored relevant evidence of his actual role in facilitating the current crimes. Second, the trial court was not required to expressly state every consideration supporting its decision. (See *People v. Carmony*, *supra*, 33 Cal.4th at p. 378 [when record is silent, presumption trial court applied the law is applicable].)

15

**DISPOSITION**

The judgments are affirmed.


PERLUSS, P. J.


We concur:


WOODS, J.


ZELON, J.