Filed 12/12/25  P. v. DelCambre CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DAMON DELCAMBRE,<br><br>    Defendant and Appellant. | B341907<br><br>(Los Angeles County<br>Super. Ct. No. BA227612) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Affirmed with directions.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Michael J. Wise, Deputy Attorney General, for Plaintiff and Respondent.

_____

In 2003 a jury convicted Damon DelCambre of first degree murder with a true finding that the murder was committed during the course of a 1994 bank robbery. The jury also convicted DelCambre of second degree robbery based on a robbery committed in 2000. In 2020 DelCambre petitioned for resentencing under Penal Code former section 1170.95 (now section 1172.6)[1] with respect to his conviction for murder. The superior court summarily denied his petition. DelCambre appealed, and we reversed, directing the court on remand to issue an order to show cause and conduct further proceedings in accordance with former section 1170.95, subdivision (d).

On remand the prosecution conceded DelCambre could not now be convicted of murder because of changes made to sections 188 and 189 by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015). The prosecution requested the trial court reduce DelCambre's first degree murder conviction to second degree robbery. The superior court granted the request and held a resentencing hearing at which it sentenced DelCambre as a third strike offender to an aggregate state prison term of 30 years to life.

DelCambre contends the superior court abused its discretion in denying his request under _People v. Superior Court (Romero)_ (1996) 13 Cal.4th 497 (_Romero_) to strike one of his prior serious or violent felony convictions. We find no abuse of discretion and affirm the judgment. However, we direct the court to correct errors in the abstract of judgment.

---

[1]     Further statutory references are to the Penal Code.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *The Evidence at Trial, the Convictions, and the First Appeal*

On May 5, 1994 two teenagers entered the Hanmi Bank on South Western Avenue in Los Angeles. The teenagers scuffled with a security guard and grabbed his gun, which went off. The security guard was shot and died as a result of the wound. During the struggle with the security guard, DelCambre approached a bank teller and told her to put money in a bag he had placed on the counter. Once the money (approximately $20,000) was in the bag, DelCambre grabbed it and ran out of the bank. The teenagers had also fled the scene by then.

On October 10, 2000 three masked men robbed a Bank of America in Pasadena. One man pointed a gun at a bank teller while another man took cash out of the cash drawer. The third man secured the area, telling customers to be quiet and get on the floor. The three robbers fled when an alarm was triggered. DelCambre was apprehended a few minutes later in a vehicle matching the description of the robbers' getaway car. Police officers identified DelCambre as one of the suspects in the 1994 robbery.

DelCambre was found guilty of the first degree murder of the security guard during the 1994 bank robbery (§ 187 subd. (a); count 1) with a true finding on a felony-murder special-circumstances allegation (§ 190.2, subd. (a)(17)) and of second degree robbery based on the 2000 bank robbery (§ 211; count 2).

In connection with count 2, the trial court found in a bifurcated proceeding that DelCambre had suffered two prior serious or violent felonies within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170.12): a conviction for assault on a peace officer in 1994 and a conviction for robbery in 1999. The

3

court sentenced DelCambre to life without the possibility of parole for the special-circumstance felony murder (count 1), plus a consecutive term of 25 years to life as a third strike offender for the 2000 robbery (count 2).

We affirmed DelCambre's conviction on appeal. (*People v. DelCambre* (Aug. 9, 2004, B168754) [nonpub. opn.].)

B.      *DelCambre's Petition for Resentencing and the Second Appeal*

On October 1, 2020 DelCambre, represented by counsel, filed a petition for resentencing under former section 1170.95. DelCambre alleged he had been convicted on count 1 under a felony-murder theory and could not now be convicted of first or second degree murder due to recent statutory changes relating to felony murder and the natural and probable consequences doctrine.

The superior court summarily denied the petition without requesting briefing from the prosecutor or holding an evidentiary hearing. DelCambre appealed, and we reversed the order denying his petition, concluding the record of conviction did not categorically establish DelCambre was ineligible for resentencing, and the court therefore prejudicially erred in failing to hold an evidentiary hearing. We ordered the court on remand to issue an order to show cause and hold an evidentiary hearing pursuant to section 1172.6, subdivision (d). (*People v. DelCambre* (Mar. 15, 2022, B308999) [nonpub. opn.].)

C.      *DelCambre's* Romero *Motion and Resentencing*

On remand, the prosecutor conceded there was no evidence DelCambre was the actual killer of the security guard in 1994, no

evidence DelCambre intended to kill the security guard or intended to aid and abet a life-endangering act, and no evidence DelCambre acted with reckless indifference to human life. Accordingly, the prosecution requested the superior court reduce DelCambre's first degree murder conviction (count 1) to second degree robbery, and DelCambre stipulated to the reduction. The court accepted the concession and redesignated count 1 as a conviction for second degree robbery.

DelCambre filed a sentencing memorandum, which included a motion to strike one of his prior strike convictions under *Romero* and section 1385 so that he would be resentenced on count 2 as a second-strike offender.[2] DelCambre argued he had grown up in an unstable home, was exposed to violence at an early age, and began using marijuana when he was 11 or 12 years old. However, he had completed his GED while incarcerated, took part in self-help groups and college courses, and had recently been moved to a medium security facility. DelCambre submitted a "social history memo" completed by a social worker that recounted interviews with DelCambre's family members and provided detailed information on DelCambre's upbringing, temperament, and rehabilitative efforts while incarcerated. According to the memo, DelCambre received multiple rules violation reports (RVR's) during the first 10 years he was incarcerated, including for fighting, drug and weapons possession, assault on an inmate, and a yard fight. However, since 2011, DelCambre received an RVR for possession of a cell

---

[2] As the prosecutor explained, the prior strikes were alleged in the information only as to count 2 because the strike convictions had not yet occurred at the time of the 1994 offense charged in count 1.

5

phone but no RVR's for violent conduct. The memo concluded that "at the time of the offenses in this case, Mr. DelCambre was a struggling 20-year-old young man with unresolved anger from childhood and the influence of negative antisocial peers. . . . Today, Mr. DelCambre presents as a man who has benefitted from his ongoing involvement and commitment to rehabilitative programming and personal growth."

DelCambre also submitted a handwritten letter he wrote explaining that he had taken part in the 1994 robbery because he was immersed in gang culture and was "young, greedy, and [an] entitled moron." He took responsibility for his part in the 1994 robbery but stated he did not have any role in the shooting of the security guard. Nevertheless, he was "remorseful for the terrible actions that transpired as a result of a horrible crime that I took part in." He further stated, "I can unequivocally and without a shadow of a doubt guarantee that the chance of my recidivism is zip, zilch, zero, nada, none, etc." DelCambre attached to his motion numerous letters from his family and friends vouching for his personal growth and character.

The People opposed DelCambre's *Romero* motion, arguing his prior convictions were "numerous or of increasing seriousness" and there were no circumstances in mitigation. Further, DelCambre was on parole at the time of the 2000 robbery.[3]

---

[3] DelCambre acknowledges "he had an extensive criminal record: the two strike priors (BA100901 [1994 assault with a deadly weapon on a peace officer]; YA036841 [1997 robbery]); convictions for weapons possession (BA052521 [1992 possession]; 92R07704 [1992 possession]; BA136942 [1996 felony possession]; RIF079749 [1998 felon possession]); unauthorized taking of a motor vehicle (TA020407 [1992]); Appellant was on parole at the

On October 3, 2024 the superior court held a hearing on DelCambre's resentencing petition at which it denied the *Romero* motion. The court stated it had "read and considered the report of the probation officer and the resentencing memoranda filed by both the People and the defense" as well as "all the paperwork about the defendant." The court noted DelCambre had six prior felony convictions at the time of the 2000 robbery and was on parole during the commission of the crime. The court listed the factors it must consider under *Romero* and *People v. Williams* (1998) 17 Cal.4th 148 (*Williams*) and concluded, "Based upon . . . my knowledge of the background of this offense and the character of the defendant, notwithstanding the fact that he had succeeded in prison in certain [respects], I do not find [him] outside the spirit of the three strikes law at all, and the motion to strike any prior conviction is denied."

The superior court sentenced DelCambre to the upper term of five years on count 1 (the 1994 robbery) plus a consecutive indeterminate term of 25 years to life as a third strike offender on count 2 (the 2000 robbery).

DelCambre timely appealed.

## DISCUSSION

A.  *Governing Law and Standard of Review*

A trial court has discretion under section 1385, subdivision (a), to dismiss a strike conviction for purposes of sentencing in furtherance of justice. (*Williams*, *supra*, 17 Cal.4th at p. 158; *Romero, supra*, 13 Cal.4th at p. 530.) In determining

---

time he committed the strike priors, and on parole at the time he committed the robbery in this case."

whether to strike a prior conviction, the court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [three strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, at p. 161; accord, *People v. Dain* (2025) 18 Cal.5th 246, 257.)

"[A] court's failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*); accord, *People v. Dain, supra*, 18 Cal.5th at pp. 257-258.) A trial court does not abuse its discretion unless its ruling "is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, at p. 377; accord, *People v. McDowell* (2012) 54 Cal.4th 395, 430.) The party challenging the sentence has the burden to show the sentence was irrational or arbitrary. (*Carmony*, at p. 376; *People v. Avila* (2020) 57 Cal.App.5th 1134, 1140.) "'"In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."' [Citations.] . . . '"An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge."'" (*Carmony*, at pp. 376-377.)

Because the three strikes law "creates a strong presumption that any sentence that conforms to [the law's] sentencing norms is both rational and proper," there are very limited circumstances under which the appellate court will find

8

an abuse of discretion. (*Carmony, supra*, 33 Cal.4th at p. 378.) These circumstances include where the court is unaware of its discretion to strike a prior conviction; it considers impermissible factors; or, under the circumstances, imposition of a three strikes sentence would be irrational or arbitrary. (*Ibid.*; *People v. Avila, supra*, 57 Cal.App.5th at pp. 1140-1141.) Only under "'extraordinary'" circumstances does the court's failure to strike a prior conviction constitute an abuse of discretion. (*Carmony*, at p. 378; accord, *People v. Finney* (2012) 204 Cal.App.4th 1034, 1040 ["Once a career criminal commits the requisite number of strikes, the circumstance must be 'extraordinary' before he can be deemed to fall outside the spirit of the three strikes law."].)

B.    *The Superior Court Did Not Abuse Its Discretion in Denying DelCambre's* Romero *Motion*

DelCambre has failed to show the trial court's ruling in denying his *Romero* motion was "so irrational or arbitrary that no reasonable person could disagree with it." (*Carmony, supra*, 33 Cal.4th at p. 377.) The court was aware of its discretion and specifically considered the factors set forth in *Williams, supra*, 17 Cal.4th 148. As the court noted, DelCambre had taken advantage of rehabilitative programming while incarcerated but nevertheless had an extensive criminal history. Between 1992 and 2000 DelCambre suffered six felony convictions and one misdemeanor conviction. Further, many of the convictions were for crimes that were committed while DelCambre was on parole or probation.

DelCambre argues the superior court did not "adequately consider appellant's current character and rehabilitative prospects" but instead "improperly focus[ed] on appellant's prior

9

and current convictions." Specifically, he asserts, the court failed to consider as mitigating factors the People's concession that DelCambre was not liable for felony murder in relation to the 1994 robbery; DelCambre's age at the time of resentencing (49 years old) and his age at the time of the strike offenses (20 and 25 years old). In addition, DelCambre asserts the court should have considered his "peripatetic upbringing, fractured and volatile relationship with his parents and stepparents, and a history of early drug use and gang involvement"; his participation in programming while incarcerated; the lack of any rules violations for violence since 2010; and the character letters from his friends and family members.

Because these mitigating factors were presented to the superior court and the court stated it had reviewed the materials DelCambre had submitted, we presume the court considered the information in the absence of evidence in the record to the contrary. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) Further, there is no requirement that the court explain the weight given to each factor or its reasons for weighing the factors as it did. (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637 [with respect to a *Romero* motion, "'[t]he trial court is not required to state reasons for declining to exercise its discretion'"]; *Myers*, at p. 310 ["the fact that the court focused its explanatory comments on the violence and potential violence of appellant's crimes does not mean that it considered only that factor"].)

At its core, DelCambre's argument is that the superior court should have given less weight to his criminal history and greater weight to his rehabilitative progress and character. Reweighing those factors is not the proper function of an appellate court. (*People v. Myers, supra,* 69 Cal.App.4th at

10

p. 309.) We recognize that DelCambre has made significant positive changes over the past decade. However, we cannot say the sentence is irrational given his prior convictions and behavior during his first 10 years of incarceration. Further, nothing in the record indicates the court misunderstood its discretion or exercised that discretion in an irrational or arbitrary manner.

DelCambre's argument that the superior court abused its discretion by not considering the factors outlined in section 1385, subdivision (c)(2), is unavailing. Section 1385, subdivision (c)(1), provides "the court shall dismiss an enhancement if it is in the furtherance of justice to do so." Section 1385, subdivision (c)(2), provides that, in exercising its discretion under subdivision (c), the court must consider and "afford great weight to evidence offered by the defendant to prove" any of nine listed mitigating factors (see § 1385, subd. (c)(2)(A)-(I)), "unless the court finds that dismissal of the enhancement would endanger public safety" (*id.*, subd. (c)(2)). DelCambre argues the court failed to give "great weight" to evidence of these mitigating factors.

As DelCambre acknowledges, however, the mitigating factors listed in section 1385, subdivision (c), do not apply to a superior court's decision whether to dismiss a prior strike conviction under section 1385, subdivision (a), and the three strikes law. Every court that has considered the issue has held that, because "subdivision (c) of section 1385 applies only to an 'enhancement,'" and the three strikes law is not an enhancement, section 1385, subdivision (c), does not apply to the three strikes law. (*People v. Burke* (2023) 89 Cal.App.5th 237, 243; see, e.g., *People v. Dowdy* (2024) 107 Cal.App.5th 1, 9-10; *People v. Olay* (2023) 98 Cal.App.5th 60, 67 (*Olay*); *People v. Tilley* (2023) 92 Cal.App.5th 772, 776, fn. 2.)

11

As the court in *People v. Burke* explained, "The term 'enhancement' has a well-established technical meaning in California law. [Citation.] 'A sentence enhancement is "an additional term of imprisonment added to the base term."' [Citations.] It is equally well established that the Three Strikes law is not an enhancement; it is an alternative sentencing scheme for the current offense. [Citations.] We presume the Legislature was aware of, and acquiesced in, both this established judicial definition of enhancement and the distinction between an enhancement and an alternative sentencing scheme such as the Three Strikes law." (*People v. Burke*, *supra*, 89 Cal.App.5th at p. 243.) The statutory history of section 1385 further supports this interpretation. "The June 2021 bill analysis of Senate Bill 81 by the Assembly Committee on Public Safety distinguished an 'enhancement' from 'an alternative penalty scheme' like the Three Strikes law. [Citations.] After making that distinction, the bill analysis states, in no uncertain terms, that '[t]he presumption created by this bill applies to enhancements . . . *but does not encompass alternative penalty schemes*.' [Citation.] A more unambiguous statement of the Legislature's intent to adopt the legal meaning of enhancement for section 1385, subdivision (c) can hardly be imagined." (*Olay*, *supra*, 98 Cal.App.5th at p. 67.)

DelCambre urges us to reject this reasoning and find the superior court abused its discretion by failing to consider the factors listed in section 1385, subdivision (c)(2). He bases his argument on an uncodified 2023 Annual Report and Recommendations of the Committee on the Revision of the Penal Code (2023 Report), which stated, "The Committee now recommends that strike enhancements be treated like all other

12

enhancements for purposes of [section 1385]. There is no rational reason to treat prior strikes differently from other sentencing enhancements." Although the Committee on the Revision of the Penal Code apparently believed that section 1385, subdivision (c), *should* apply to the three strikes law, our role is to determine the intent of the Legislature, not what recommendations were made to the Legislature (but rejected). "If the Legislature had wanted section 1385, subdivision (c), to apply to prior strikes as well as to enhancements as legally defined, it would have said so." (*Olay, supra*, 98 Cal.App.5th at p. 67.)

C.    *The Abstract of Judgment Requires Correction*

We have identified several apparent errors in the abstract of judgment that the superior court must correct. First, DelCambre is identified in the abstract of judgment (and the probation report) as "Damian Timothy DelCambre." However, all other references in the record (including the information and DelCambre's handwritten letter) state his full name as "Damon DelCambre." On remand, the court should confirm DelCambre's correct legal name and ensure it is reflected in the abstracts of judgment.

In addition, the record contains an abstract of judgment for the indeterminate term only; there is no abstract in the record for the determinate term. The abstract for the indeterminate term lists the date of the offense as 1994. But DelCambre was sentenced to an indeterminate term as a third strike offender on count 2 for the 2000 robbery. On remand the superior court should correct the year listed for the correct offense with the indeterminate term and ensure that a separate abstract of

13

judgment is prepared for the five-year determinate term on count 1.

Further, the date of birth on the information does not match the date of birth on the indeterminate term abstract of judgment, and multiple dates of birth are listed for DelCambre in the probation report. The superior court should confirm DelCambre's date of birth and ensure it is correctly reflected in both abstracts of judgment.

Finally, in item 5 on the abstract of judgment for the indeterminate term, the box has been checked (correctly) for life without the possibility of parole; however, there is no box checked in item 6 to indicate a sentence of 25 years to life. Nor has a box been checked in item 8 to indicate DelCambre was sentenced under the three strikes law. The superior court must also correct these errors on remand.

## DISPOSITION

The judgment is affirmed. The superior court is directed to correct the abstract of judgment for the indeterminate term as discussed herein, to prepare a correct abstract of judgment for the determinate term, and to send corrected abstracts of judgment to the Department of Corrections and Rehabilitation.


FEUER, J.

We concur:


MARTINEZ, P. J.          STONE, J.


14